# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:09cv368

| | |
|---|---|
| KRISTIN A. MESSINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(b), pursuant a specific Order of referral of the district court, and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

**I.     Administrative History**

Plaintiff filed applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income on August 22, 2006, with an alleged onset date of May 1, 2003. Tr., at 83-88, 89-92. Her applications were denied initially and upon reconsideration. Plaintiff requested an administrative hearing, and Administrative Law Judge (hereinafter "ALJ") Michael J. Davenport held a hearing

on May 20, 2009, at which plaintiff, who was represented by counsel, plaintiff's husband, and a vocational expert appeared and testified. Tr., at 20-48.

On June 4, 2009, the ALJ issued a decision finding that plaintiff was not disabled. Tr., at 6-19. The Appeals Council denied Plaintiff's request for review on July 30, 2009, rendering the ALJ's decision the final decision of the Commissioner. Tr., 1-3, 4, 5.

## II. Factual Background

As of the date of the administrative hearing on May 20, 2009, plaintiff was 42 years old, had completed the tenth grade and obtained a GED. Tr., at 24. She had past work experience at a plastics extrusion company in New Jersey, performing customer service work, which involved preparing "quotations, letters, [and] filing." Tr., at 26. She further testified that her other prior work were similar, customer service type jobs. Tr., at 27. She testified that in 2003 she stopped working because she was "very, very depressed." Tr., at 28. When asked by the ALJ to elaborate as to why she stopped working, plaintiff testified that:

> I have a lot of voices in my head, a lot of different things that go through
> my head and I felt overwhelmed. I wanted to be alone. I didn't want
> loud noises, light. Interaction with people became difficult.

Tr., at 30. In additional to sleep disturbances and job performance anxiety, plaintiff testified that she was very nervous about anybody finding out about her condition

2

because she thought she might lose her job. Tr., at 31. She testified that at work she was easily confused by numbers, so there were a lot of mistakes, and that she also had problems with decreasing short-term memory, so she had to make a lot of notes in order to remember things. Tr., at 31. Plaintiff also reported difficulty concentrating. Tr., at 32.

Plaintiff testified that prior to leaving her job in 2003, she was under medical care for depression and anxiety, and was being treated with Prozac. There are substantial medical notes in the record documenting such care, and it appears that she has been under constant care for her mental illness since leaving work in 2003. Her primary care provider, Dr. Bierrenbach, has diagnosed plaintiff as suffering from Bipolar II/compulsive disorder and mood disorder. Tr., at 29. She testified that during the periods when the hypomania or depression is severe, she does not leave her house for weeks. Tr., at 32.

Since 2003, plaintiff testified to limited activities of daily living. She testified that she does not leave her house often and only goes to Dr. Bierrenbach's office and to the grocery store, and that when she does venture out to the store, she only goes late at night because she does not like crowds and does not want to be around people. Tr., at 34. She further testified that there are days when she does not dress outside of her sleep attire, and does not groom herself. She testified further that

3

> Because sometimes what I feel is that when I got the manic, the hypo manic state, I would say, oh, I have to take a shower and then the voices, you know, like I said, would start and all through my head and I'd say, I'd get overwhelmed and say well, I have to clean up a little bit and take care of this and take care of that, and then I would say, I would just get so exhausted from being overwhelmed, mentally fatigued that I didn't go into the shower. I didn't do my other tasks either.

Tr., at 34. She testified that she does not spend anytime out of her home at church, organizations, or clubs and requires the help of her husband for most household activities. Tr., at 42.

Plaintiff also testified concerning her persistence at accomplishing tasks. She testified that sometimes she finishes her chores, and sometimes she does not. When she does not finish, it's because "I don't feel well or I feel confused and I can't, I get confused from room to room. I can't keep up a routine." Tr., at 35. She also testified that her obsessive condition makes her very uptight, and that she thinks everything should be in order. She becomes frustrated when she can not get things for herself the way she wants to. She described feeling like she is being controlled by this condition. Tr., at 35-36. She testified that the worry and anxiety about everything being perfect are what keep her up at night.[1]

---

[1] Plaintiff also testified concerning her physical impairments, which include gynecological issues that have resulted in surgery, back pain, as well as some lingering effects from a rod implanted during repair of a broken leg. Medical evidence also indicates that at the time of decision plaintiff also suffered from morbid obesity, standing 65 inches and weighing around 220 pounds. As this recommendation focuses on findings of the ALJ concerning her non-exertional impairments and vocational issues, the undersigned will not explore further the evidence concerning such physical impairments.

The ALJ called and qualified a vocational expert (hereinafter "VE") to provide testimony at the hearing. Mark Leaptrot, VE, testified that plaintiff's past relevant work was that of a secretary and general office clerk. When asked by the ALJ to assume her high school equivalency, age and vocational background as given and if Ms. Messina was restricted to demands of light activity (work that required lifting no more than 20 pounds occasionally and 10 pounds frequently) and could only do simple, unskilled jobs that would not require frequent or regular contact with the general public and she was limited to light work activity, the VE testified that there were jobs she could do and gave examples thereof. Tr., 46-47.

In an alternative hypothetical, that included restrictions which the ALJ ultimately did not find, the ALJ then asked the VE

> [I]f the claimant's ability to concentrate and persist at work tasks, if those areas are severely limited, could she do the jobs that you've enumerated or any others?

Tr., at 47. The VE answered

> [N]o sir. One is expected to give attention and concentration in at least two-hour blocks in competitive employment and that would really preclude jobs I've mentioned or any other work in the national economy.

Tr., at 47.

* * *

The issue squarely presented is whether substantial evidence supports the ALJ's exclusion of a limitation on plaintiff's ability to concentrate and persist at work in his assessment of plaintiff's residual functional capacity.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different

conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that the ALJ erred when he excluded the only relevant medical evidence concerning plaintiff's mental ability to concentrate, persist, or keep pace in a work environment.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.  An individual who does not have a "severe impairment" will not be found to be disabled;

c.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

C. The Administrative Decision

In relevant part, the ALJ concluded at Step One that plaintiff had not performed any substantial gainful activity since her alleged onset date of May 1, 2003. Tr., at 11. At Steps Two and Three, the ALJ found that plaintiff had severe impairments consisting of polycystic ovarian syndrome, remote history of a broken right leg, back pain, obesity, a bipolar disorder, and obsessive compulsive disorder, Tr., at 11, but that she did not have any impairment or combination of impairments that met or equaled any impairment contained in the listings. Tr., at 11.

Before reaching the Fourth Step, the ALJ assessed plaintiff's RFC. The ALJ found that plaintiff retained the RFC to perform simple, unskilled light work that did not require working with the public. Tr., at 11.

At the Fourth Step, the ALJ concluded that plaintiff could not perform her past relevant work. Tr., at 17,

At the Fifth Step, the ALJ concluded that with such RFC, plaintiff could perform other work that existed in significant numbers in the national economy, Tr., at 17-18, and that plaintiff was not disabled. Tr., at 18.

D. Discussion

### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

> The decision denying the plaintiff Social Security Disability benefits by the Administrative Law Judge, as affirmed by the Appeals Council, is not supported by substantial evidence.

Plaintiff's Brief, at 10. Plaintiff's assignment of error will be discussed below.[2]

### 2. First Assignment of Error

Plaintiff contends that the ALJ's decision denying her request for benefits is not supported by substantial evidence. In particular, plaintiff takes issue with the ALJ's exclusion of evidence from the RFC, concerning plaintiff's concentration, persistence, or pace. For reference,

> [c]oncentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.

20 C.F.R. Appendix 1, Subpart P of Regulation No. 404 §12.00 (C)(3). As the VE testified, "[o]ne is expected to give attention and concentration in at least two-hour blocks in competitive employment . . . ." Tr., at 47. Review of the evidence of record reveals that all consulting physicians where of the opinion that plaintiff suffered from moderate impairment of concentration, persistence or pace. First, Dr. Susan

---

[2] Plaintiff also claims that her bipolar disorder, which the ALJ found was a severe impairment (Tr. 11 at Finding 3), met Section 12.04 of the listings, namely, that section's Paragraph A and B criteria. The undersigned has, respectfully, not taken up such contention as it appears that the error in formulating RFC is dispositive.

Killenberg, a Disability Determination Services (DDS) psychologist, opined in a consultative opinion that, *inter alia*, plaintiff's mental impairments resulted in moderate difficulties in maintaining concentration, persistence, and pace. Tr., at 228. Likewise, Dr. Gloria J. Edmunds, another DDS psychologist, opined that plaintiff's mental impairments resulted in moderate difficulties in maintaining concentration, persistence, and pace. Tr., at 291. Finally, Dr. Jennifer Zeisz, a consulting psychiatrist, and Ms. Jerelene V. Howell, a consulting licensed psychological associate, expressly found that plaintiff had a moderate impairment in concentration. Tr., at 200-202. No mention is made in the ALJ's RFC determination of such moderate impairment.

While Dr. Killenberg's finding of mild difficulties in maintaining social functioning and Dr. Edmunds' finding of moderate difficulties in social functioning were implicitly adopted in the ALJ's RFC finding, to wit, a finding that she was restricted to work "that does not require working with the public," no explanation is given as to why similar opinions of those same doctors, plus that of Dr. Zeisz, of moderate difficulties in maintaining concentration, persistence, and pace were not included in the RFC.

Recently, the Court of Appeals for the Tenth Circuit addressed a nearly identical inconsistency:

The government never addresses <u>Clifton</u> or appellant's argument that the ALJ failed to explain his reasons for rejecting some of Dr. Rawlings' restrictions, while implicitly adopting others. Rather, the government supplies some reasons that it believes would support the ALJ's RFC finding. The ALJ did not provide these explanations, however. As appellant correctly points out in her reply brief, this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself. *See, e.g., Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir.2004) (holding that district court's "*post hoc* effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process"); see also *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir.2004) (per curiam) (same); *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

In addition, the government argues that a "moderate" impairment, as defined on the mental RFC form, means that the "individual is still able to function satisfactorily." Aplt.App., Vol. II at 149. Appellant shows in the reply brief, however, that the government has taken the definition for "moderate" on the mental RFC form out of context-a moderate impairment is not the same as no impairment at all, and Dr. Rawlings clearly intended to indicate impairments on this form. *See id.* at 149-50. **We note that the ALJ also appeared to accept that a moderate impairment was not the same as no impairment at all. By including in his RFC determination that appellant was limited to "simple, repetitive tasks" with "only incidental contact with the public" and "no requirement for making change," id. at 20, the ALJ apparently accepted that appellant is not able to "[u]nderstand and remember detailed instructions," "[c]arry out detailed instructions," or "[i]nteract appropriately with the public," all categories that Dr. Rawlings marked as moderately impaired**, id. at 149-50.

<u>Haga v. Astrue</u>, 482 F.3d 1205, 1207 -1208 (10th Cir. 2007)(emphasis added).

\* \* \*

11

The undersigned is mindful of the expertise which the Commissioner brings to both the administrative process as well as judicial review. In this case, it is certain from the well written and thoughtful opinion of the ALJ that he closely considered all the evidence. The undersigned is, however, concerned that while the ALJ limited plaintiff's RFC to work that did not involve contact with the public based on evidence of mild to moderate impairment of social functioning, the ALJ did not include a similar restriction based on what appears to be unanimous medical opinion from DDS physicians that plaintiff suffered moderate impairment in maintaining concentration, persistence, and pace. An ALJ cannot simply pick and choose only the medical evidence that supports his position. Harris v. Comm'r of Soc. Sec., 2005 WL 1162530, at *8 (E.D.Va. May 12, 2005); Switzer v. Heckler, 742 F.2d 382, 385 (7th Cir.1984). In this case, a failure to include a restriction as to concentration, persistence, and pace was case dispositive as the VE testified that a severe limitation in such areas would "really preclude jobs I've mentioned or any other work in the national economy." Tr., at 47.

The undersigned is, therefore, compelled to respectfully recommend to the district court that this action be remanded to the Commissioner so that the ALJ can include a limitation in his RFC based on plaintiff's moderate impairment in

maintaining concentration, persistence, and pace, and then consider whether plaintiff can perform jobs that exist in the regional and national economies.

E.   **Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error.  Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence.  See Richardson v. Perales, supra; Hays v. Sullivan, supra.  Finding that there was not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, the undersigned must recommend to the district court that plaintiff's Motion for Summary Judgment be granted, the Commissioner's Motion for Summary Judgment be denied, and that the decision of the Commissioner be reversed and this action remanded with instructions to the Commissioner to remand to the agency for additional proceedings not inconsistent with this recommendation.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)   the decision of the Commissioner, denying the relief sought by plaintiff, be **REVERSED**;

(2)   the plaintiff's Motion for Summary Judgment (#8) be **GRANTED**;

(3) the Commissioner's Motion for Summary Judgment be **DENIED**; and

(4) this action be **REMANDED** with instructions.

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: August 12, 2010

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge